COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2024AP2603**
**2024AP2604**

Cir. Ct. Nos. 2023CV68
2023CV78

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

---

**NO. 2024AP2603**

**MICHAEL HORNBOSTEL,**

 **PLAINTIFF-APPELLANT,**

 **V.**

**TOWN OF LAC DU FLAMBEAU, MATTHEW GAULKE, GLORIA COBB, ROBERT HANSON, LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS AND X, Y, Z UNKNOWN DEFENDANTS,**

 **DEFENDANTS-RESPONDENTS.**

---

**NO. 2024AP2604**

**ROBERT H. BEER, JR. AND NICOLE E. BEER,**

 **PLAINTIFF-APPELLANT,**

 **V.**

**TOWN OF LAC DU FLAMBEAU, MATTHEW GAULKE, GLORIA COBB,**

**ROBERT HANSON, LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS AND X, Y, Z UNKNOWN DEFENDANTS,**

**DEFENDANTS-RESPONDENTS.**

---

APPEALS from orders of the circuit court for Vilas County: DANIEL L. OVERBEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.  In these consolidated appeals, Michael Hornbostel and Robert and Nicole Beer (collectively, "the Homeowners") appeal from circuit court orders granting the Town of Lac du Flambeau's[1] motions to dismiss their lawsuits.  The Homeowners argue that the circuit court erred by concluding that the Lac du Flambeau Band of Lake Superior Chippewa Indians is an indispensable party under WIS. STAT. § 803.03 (2023-24).[2]  For the following reasons, we affirm.

---

[1] The initial defendants in this action included, in pertinent part, the Town of Lac du Flambeau; Matthew Gaulke, in his capacity as the Town's chairman; Gloria Cobb, in her capacity as a town supervisor; and Robert Hanson, in his capacity as a town supervisor (collectively, "the Town").

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

**BACKGROUND**

¶2 The Homeowners are residents of the Town. The only vehicular access to Hornbostel's residence is through East Ross Allen Lake Lane, and the only vehicular access to the Beers' residence is through Elsie Lake Lane (collectively, "the Roads"). According to the Homeowners, the Roads are "public Town road[s]." However, it is undisputed that at least portions of the Roads cross into the Tribe's reservation.

¶3 In July 2023, the Homeowners filed their respective state lawsuits at issue in this appeal. They alleged that on January 31, 2023, the Tribe placed large concrete barricades "on, over, and across" the Roads, making them impassable. The Homeowners further alleged that the Town, "without any warning or notice" to them, "allowed" the Tribe to place the barricades on the Roads. The barricades were removed on or around March 15, 2023, following negotiations between the Town and the Tribe. However, no permanent agreement regarding the Roads had been reached between the Town and the Tribe at the time the present lawsuits were filed.

¶4 Each lawsuit asserted multiple claims against the Town for monetary damages and other relief based on allegations that the Town had allowed the Tribe to place barricades on public roads and had failed to "secure permanent, unrestricted public road access." The Homeowners did not name the Tribe as a defendant.

¶5 Specifically, the Homeowners alleged inverse condemnation claims pursuant to WIS. STAT. § 32.10, state and federal constitutional takings claims, and nuisance claims. The Homeowners further alleged that they were entitled to monetary damages because the Town violated their federal procedural due process

3

rights by failing to notify them of the barricades or provide them with an opportunity to be heard. They additionally alleged that the Town violated their substantive due process rights because the Town's "actions/inaction were arbitrary, wrongful actions."

¶6 The Homeowners also asserted three additional statutory claims in each lawsuit. They asserted claims under WIS. STAT. § 66.1035, alleging the Town violated its duty "to care for, supervise, and keep all highways under the Town's jurisdiction free and unobstructed at all times." According to the Homeowners, they "will be substantially damaged by the nonperformance by the Town of its statutory duties to keep [the Roads] free and unobstructed at all times," and they "[a]lternatively" asserted that they were "entitled to a writ of mandamus compelling the Town … to put [the Roads] in a passable condition as soon as practicable."

¶7 The Homeowners further alleged claims under WIS. STAT. §§ 82.03 and 844.01, asserting that the Town violated its statutory duties therein by not keeping the Roads "passable at all times." The Homeowners alleged that the Town's failure to comply with §§ 82.03 and 844.01 "caused damage … by terminating access to" their properties, that they "will be substantially damaged by the nonperformance by the Town of its statutory duties to keep [the Roads] passable at all times," and, "[a]lternatively," that they were entitled to a writ of mandamus compelling the Town "to put [the Roads] in a passable condition as soon as practicable." In addition, the Homeowners alleged that they were "entitled to those remedies set forth in" § 844.01(1), which included remedies "to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief."

¶8      In the prayer for relief sections of the Homeowners' complaints, they sought "just compensation," monetary damages, a "permanent injunction enjoining the Town from barring access to the" Homeowners' properties, a writ of mandamus "compelling the Town … to put [the Roads] in a passable condition," costs and attorneys fees, and any other relief deemed just and equitable.

¶9      In response to the Homeowners' lawsuits, the Town agreed that the Roads are "to remain open to the public" but noted that the status of the Roads was subject to federal litigation and that the Tribe "has taken the position it may restrict public road access." Furthermore, the Town denied that it "allowed" the Tribe to place barricades on the Roads.

¶10     The Town moved to dismiss both state lawsuits on the ground that the Tribe was an indispensable party pursuant to WIS. STAT. § 803.03.[3] The Town argued that the Homeowners were placing the blame on the wrong party, that the Tribe was "entirely" responsible for the Roads' closures, and that the Town took immediate action to reopen the Roads once the Tribe closed them. Thus, the Town argued that "[l]itigation of this matter … will necessarily involve a legal determination of both the [Tribe's] purported ownership of the roads as well as its claimed authority to block the roads." In turn, the Homeowners argued that the Tribe was not a necessary party under § 803.03(1) and that, even if it were, the Tribe was not indispensable and the lawsuit could proceed "in equity and good conscience" after consideration of the factors listed in § 803.03(3).

---

[3] The Town also argued in its motions to dismiss that the United States was an indispensable party to both lawsuits. The circuit court did not address this issue, and neither party raises it on appeal. Accordingly, we offer no opinion on this issue and do not address it further.

¶11    In an oral decision, the circuit court concluded that the Tribe was a necessary party under WIS. STAT. § 803.03(1).  Thereafter, the court issued a written order in each case requiring the Homeowners to name the Tribe as a party in both lawsuits, and the Homeowners amended their pleadings accordingly.  The court left open the balance of the Town's motion to dismiss.

¶12    Following the circuit court's ruling, the Tribe moved in both state lawsuits to dismiss the Homeowners' claims against it based on the Tribe's sovereign immunity.  Neither the Town nor the Homeowners challenged the Tribe's motions to dismiss.

¶13    The circuit court granted the Tribe's motions to dismiss.  In addition, the court granted the balance of the Town's motions to dismiss after concluding that the Tribe was an indispensable party under WIS. STAT. § 803.03(3).

¶14    Around the same time as these state lawsuits were pending, at least four federal lawsuits relating to the Tribe's placement of barricades on the Roads were filed.  The Homeowners were a party to a lawsuit filed against individual members of the Tribe's Tribal Council[4]; however, that lawsuit was dismissed in September 2023 for lack of subject matter jurisdiction over the defendants. *See Pollard v. Johnson*, 694 F. Supp. 3d 1080, 1084, 1088 (W.D. Wis. 2023).  After that lawsuit was filed, the United States filed a trespass and ejectment action against the Town on its own behalf and as trustee of the Tribe, as well as tribal

---

[4] The Homeowners asserted several claims against the Tribal members in that case, including anticipated private and public nuisances and implied easement. *Pollard v. Johnson*, 694 F. Supp. 3d 1080, 1084 (W.D. Wis. 2023).  Their nuisance claims were based on allegations that the Tribal members "deprived them access, use and enjoyment of their homes and properties by barricading the … roads." *Id.* at 1087.

landowners. ***United States v. Town of Lac du Flambeau***, No. 23-cv-355, 2024 WL 4297671, at *1 (W.D. Wis. Sept. 26, 2024) (***Town of Lac du Flambeau I***). More than 70 homeowners who rely on the blocked roads to reach their properties intervened as defendants, including the Homeowners, and both the Town and these homeowners filed several counterclaims against the United States seeking to establish their respective rights to access. *See **id.***

¶15    The Town also filed a separate federal lawsuit against several federal defendants, alleging violations of the Administrative Procedures Act (APA) and the federal constitution, stemming from the Bureau of Indian Affairs' (BIA) decision to remove the blocked roads from the Tribal Transportation Program's National Tribal Transportation Facilities Inventory (National Inventory), which, according to the Town, requires the Roads to be open to the public. *See **United States v. Town of Lac du Flambeau***, 797 F. Supp. 3d 894, 901 (W.D. Wis. 2025) (***Town of Lac du Flambeau II***). The Homeowners were also parties to another lawsuit against several federal defendants, some of whom were named in the Town's lawsuit, alleging similar APA and federal constitutional violations. *See **id.***

¶16    In August 2025, a federal district court issued a decision in the three undismissed federal lawsuits mentioned above, concluding, in pertinent part, that the Town and the Homeowners "have a legal right to use and access" the Roads because the Roads are required to remain open to the public during the time listed on the National Inventory; that the BIA's removal of the Roads from the National Inventory was improper; and that the Homeowners have an implied easement over the Roads to access their properties.[5] *See **id.*** at 901-02. The court issued a

---

[5] The Homeowners submitted this decision as supplemental authority. Neither party states whether the federal district court decision has been appealed.

permanent injunction requiring that the Roads "remain open and accessible barring a demonstrated change in circumstances and order of this court."  *See **id.*** at 902.

¶17    The Homeowners now appeal from the circuit court's orders granting the entirety of the Town's motions to dismiss in the state lawsuits.[6]

## DISCUSSION

¶18    The only issue presented on appeal is whether the Tribe is an indispensable party under WIS. STAT. § 803.03.  The test for whether a party is indispensable has two parts.  ***McNally CPA's & Consultants, S.C. v. DJ Hosts, Inc.***, 2004 WI App 221, ¶21, 277 Wis. 2d 801, 692 N.W.2d 247.  "Courts first determine whether a party is 'necessary' for one of the three reasons set forth in … § 803.03(1)."  ***Id.*** (citation omitted).  "If none of the requirements for being a necessary party are met, the inquiry ends."  ***Id.***  Whether an entity is a necessary party is a question of law that we review de novo.  ***Nelson v. Loessin***, 2020 WI App 72, ¶10, 394 Wis. 2d 784, 951 N.W.2d 605; ***Dairyland Greyhound Park, Inc. v. McCallum***, 2002 WI App 259, ¶¶10-11, 258 Wis. 2d 210, 655 N.W.2d 474.

¶19    If a party is necessary, but "cannot be made a party,"[7] we must decide whether "in equity and good conscience the action should proceed among

---

[6] The  Homeowners'  appellate  briefs  do  not  comply  with  WIS. STAT. RULE 809.19(8)(bm), which requires a brief to "have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover."  Our supreme court has explained that this pagination requirement "will match the page number to the page header applied by the eFiling system, avoiding the confusion of having two different page numbers."  S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).  We admonish the Homeowners' counsel that future violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2).

the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." *See* WIS. STAT. § 803.03(3); *McNally CPA's*, 277 Wis. 2d 801, ¶21. "There may be occasions on which the determination of whether a party is indispensable under … § 803.03(3) will involve findings on disputed issues of fact." *Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶25. Neither the Town nor the Homeowners contend that the circuit court made findings on disputed issues of fact pertinent to § 803.03(3), and we accordingly apply a de novo review to this issue. *See Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶25.

## I. The Tribe is a necessary party under WIS. STAT. § 803.03(1).

¶20    A party shall be joined in an action if any of three criteria apply: (1) "[i]n the person's absence complete relief cannot be accorded among those already parties"; (2) "[t]he person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may" "[a]s a practical matter impair or impede the person's ability to protect that interest"; or (3) "the disposition of the action" would "[l]eave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest." WIS. STAT. § 803.03(1).

¶21    The Town asserts that "this case is all about the [R]oads" and that the Homeowners' entitlement to relief rests upon "who owns or controls the disputed section[s] of the [R]oad[s]."

---

[7] The Homeowners do not dispute that the Tribe "cannot be made a party" to this lawsuit given the Tribe's sovereign immunity. *See* WIS. STAT. § 803.03(3). We accept the Homeowners' concession without further discussion. *See Dairyland Greyhound Park, Inc. v. McCallum*, 2002 WI App 259, ¶9 n.5, 258 Wis. 2d 210, 655 N.W.2d 474.

¶22    Conversely, the Homeowners contend that "[t]his is an action for damages against a governmental unit for a compensable taking as well as for statutory violations.  The Tribe is not the governmental unit nor bound by any statutory obligation to keep the Roads open."  In other words, the Homeowners argue the Town "cannot abdicate" its duties "simply by arguing the Tribe 'made me do it.'"  Therefore, the Homeowners contend, "[w]hether or not the Tribe has an interest in the Roads is not relevant vis-à-vis the [Homeowners'] claims against the Town" because "[i]f the Tribe owns the Roads and had authority to obstruct them, the Town still has a duty to provide access by another means.  Of course, if the Town owns the Roads (as it has consistently claimed), it should have removed the barricades."  (Formatting altered.)

¶23    We conclude that complete relief cannot be accorded among the Homeowners and the Town absent the Tribe.  *See **Nelson***, 394 Wis. 2d 784, ¶15 (stating that WIS. STAT. § 803.03(1)(a) "refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought" (citation omitted)).  As the circuit court determined, it cannot "accord the [Homeowners] complete relief without determining who owns or controls the disputed section[s] of [the] [R]oad[s]."  This conclusion is true because the Homeowners' relief is contingent on the Town's rights and duties concerning the Roads.  *See **Koschkee v. Evers***, 2018 WI 82, ¶18, 382 Wis. 2d 666, 913 N.W.2d 878 (stating that in examining whether complete relief can be accorded among those already parties, "we look to the requested relief for guidance").

¶24    In particular, to grant mandamus or injunctive relief against the Town, the circuit court would first need to determine whether the Town can lawfully keep the Roads open or whether the Tribe, as it maintains, has the right to close and barricade the Roads.  If the Tribe is deemed to own and control the

10

Roads, mandamus and injunctive relief could not be granted against the Tribe. *See Midwest Env't Advocs., Inc. v. Prehn*, 2025 WI App 55, ¶¶12, 69, 418 Wis. 2d 212, 26 N.W.3d 347 (concluding that a party was necessary to a mandamus action for the release of public records because, without that party, complete relief could not be granted as that party would not be under the circuit court's jurisdiction and could not be compelled to produce the records sought). The same is true with the relief requested pursuant to WIS. STAT. § 844.01: the circuit court would be powerless to issue relief to the Homeowners against the Tribe "to restrain further injury" or "to abate the source of injury." Similarly, as the circuit court aptly recognized, if the court were to grant mandamus or injunctive relief against the Town to keep the Roads open, the Town "would be powerless to obey the order of the Court because the [T]ribe could still barricade some roads with impunity. And everybody, in some way or another, pretty much concedes that point."

¶25 Additionally, the Homeowners fail to cite any authority dictating that the Town would have a common law, statutory, or constitutional duty to keep the Roads open and passable, or to provide alternative access to their properties, if the Roads are in fact owned and lawfully controlled by the Tribe. Indeed, the Town argues that if the Tribe is correct and the Town does not have a right with respect to keeping the Roads open—i.e., the Roads are not owned or controlled by the Town—the Homeowners' WIS. STAT. § 82.03 claims would fail because the Roads are not "highways under the [T]own's jurisdiction"; their WIS. STAT. § 66.1035 claims would fail because the Roads are not "highway[s], street[s], or alley[s]"; and the Homeowners would not be entitled to "just compensation." The Homeowners fail to substantively address these arguments on appeal, and we deem their failure as a concession. *See United Coop. v. Frontier FS Coop.*, 2007

WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578; *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶26    Furthermore, as the Town argues, the Tribe is a necessary party under WIS. STAT. § 803.03(1)(a) because the Town's defenses to the Homeowners' claims implicate the Tribe and the requested relief.  The Town has asserted throughout both the federal and state lawsuits that the Roads must remain open to the public.  The Town further stated in the circuit court that it would ask the court to issue "a ruling determining that the roads at issue are open to the public pursuant to" federal law and that it would seek a determination from the court that the Tribe "lacked, and continues to lack, the authority to barricade the roads at issue."  It is undisputed that the Tribe opposes each of the Town's positions.

¶27    The circuit court correctly observed that the Tribe "might be partially, or even solely, responsible for damages incurred while the barricades were in place." *See **Nelson***, 394 Wis. 2d 784, ¶¶15-16.  In fact, the Homeowners alleged in their federal lawsuit against individual members of the Tribe that its members created a nuisance by barricading the Roads. ***Pollard***, 694 F. Supp. 3d at 1084.

¶28    Accordingly, determining who owns or controls the disputed sections of the Roads *is* "relevant vis-à-vis the [Homeowners'] claims against the Town."  The Tribe is a necessary party to the Homeowners' lawsuits to determine whether the Town could be compelled through mandamus or injunctive relief to open and maintain the Roads; whether the Town would be liable for monetary damages to the Homeowners for failing to keep the Roads passable, condemning their property, creating a nuisance, or interfering with their property under WIS.

STAT. § 844.01(1); and whether the Town violated the Homeowners' constitutional rights. In the Tribe's absence, "complete relief cannot be accorded." *See* WIS. STAT. § 803.03(1)(a).

¶29    In addition, the Tribe is a necessary party under WIS. STAT. § 803.03(1)(b)1. because the Tribe's absence will, as a practical matter, impair or impede its ability to protect its interests in the Roads. Our supreme court has explained that, under § 803.03(1)(b)1., the relevant inquiry is "not whether a prospective party has a legal or legally protected interest in the subject of an action, but whether the person or entity has 'an interest of such direct and immediate character that the [prospective party] will either gain or lose by the direct operation of the judgment.'" *Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶15 (alteration in original; citation omitted).

¶30    The circuit court held that "[i]t's undeniable that the [Tribe] has an interest in the ownership of the disputed [R]oad[s]. The liability of the [Town] is as inextricably linked to the ownership and control of the [R]oad[s] as is the [Tribe's]. Unless joined, the [Tribe] cannot protect that interest." We agree.

¶31    As we have explained above, the Tribe's dispute with the Town over control of the Roads is central to the Homeowners' claims in the state lawsuits. If the circuit court were to grant mandamus or injunctive relief in favor of the Homeowners to keep the Roads in a passable condition, the Tribe would, as the Town argues, "stand to lose because that ruling would be diametrically opposed to the Tribe's claim of total ownership and control of the roads," as evidenced by the federal litigation.

¶32    We further agree with the Town that if it is successful on any of its claimed defenses in this case, the Roads must remain open, and this outcome

13

would "trample[] on the Tribe's claimed right to unilaterally control and block the roads." Conversely, the circuit court could determine that the Tribe owns and controls the Roads, at which point the Tribe would stand to gain from the lawsuit.

¶33 The Homeowners' arguments to the contrary center on the monetary nature of their claims, but, as we have explained, even that relief is contingent on whether the Tribe or the Town owns and controls the Roads.[8] These arguments also fail to address the other alternative relief sought in the Homeowners' complaints (specifically, a writ of mandamus compelling the Town to put the Roads in a passable condition and a permanent injunction enjoining the Town from barring the Homeowners' access to their properties), which undeniably requires a determination as to the ownership and control of the Roads.

¶34 The Tribe's absence will also impair or impede its ability to protect its interests in the Roads. As the Town contends, the "Tribe's absence means it will not have the ability to argue against a writ of mandamus or an injunction ordering the Roads to remain open" and "will similarly be unable to argue against the [Town's defenses] that the Roads legally must remain open." The Homeowners do not argue that they, in the Tribe's absence, can "adequately protect" the Tribe's interests, and we therefore assume without deciding that they cannot. *See* ***Dairyland Greyhound Park***, 258 Wis. 2d 210, ¶¶17-19.

---

[8] Throughout their briefing on appeal, the Homeowners appear to contend that we should place special weight on the Tribe's arguments in the circuit court that the lawsuits can proceed without the Tribe. For example, the Homeowners cite the Tribe's statements that it does not have an interest, for purposes of WIS. STAT. § 803.03(1)(b)1., in the present lawsuits. The Homeowners cite no legal authority for the proposition that the Tribe can waive its interest under § 803.03(1)(b)1. or that a court is otherwise bound by a prospective party's legal arguments as they pertain to § 803.03. Therefore, we do not place special weight on the Tribe's arguments as a prospective party.

¶35     In all, the Tribe is a necessary party under WIS. STAT. § 803.03(1), and the circuit court correctly added the Tribe as a party to the Homeowners' lawsuits.

## II. The Tribe is an indispensable party under WIS. STAT. § 803.03(3).

¶36     We now turn to WIS. STAT. § 803.03(3). *See **McNally CPA's***, 277 Wis. 2d 801, ¶21.   Using the four factors listed in § 803.03(3)(a)-(d), we must ascertain whether "in equity and good conscience the action should proceed among the parties before it" or whether it "should be dismissed, the [Tribe] being thus regarded as indispensable." *See* § 803.03(3).  According to the Homeowners, "[c]onsideration of all four factors leads to only one conclusion: this action should proceed in the absence of the Tribe."  The Homeowners' arguments in support of this position are premised on the mistaken belief that the circuit court would not need to determine whether the Tribe or the Town owns and controls the Roads to render judgment in this case.  As we have explained, however, ownership and control of the Roads is central to the Homeowners' claims and the Town's defenses.

¶37     Under the first factor, we contemplate "[t]o what extent a judgment rendered in" the Tribe's "absence might be prejudicial" to the Tribe "or those already parties." *See* WIS. STAT. § 803.03(3)(a).  As the Town argues, judgment premised on a determination that the Town may open the Roads and ensure passage would "greatly impact and prejudice the Tribe" because it would implicate "the Tribe's ownership of the Roads and its legal authority as a claimed sovereign nation to close them or do whatever else it wishes with its land."  We therefore conclude that the prejudice factor weighs strongly in favor of a determination that the action should not proceed in the Tribe's absence, "but it is

not the only factor we must consider, and it is not necessarily the controlling factor." *See **Dairyland Greyhound Park***, 258 Wis. 2d 210, ¶28.

¶38 We next consider "[t]he extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided." WIS. STAT. § 803.03(3)(b). The Homeowners make no argument that the circuit court could impose protective provisions or shape relief to reduce the prejudicial effect on the Tribe if, in its absence, the court concluded that the Town owns and controls the Roads. Therefore, this factor also favors a determination that the action should not proceed in the Tribe's absence.

¶39 The next factor we must address is whether judgment rendered in the Tribe's absence will be "adequate." *See* WIS. STAT. § 803.03(3)(c). Again, we agree with both the circuit court and the Town that a judgment in the Tribe's absence would be inadequate. As the court stated,

> Any judgment rendered requiring the [T]own to take action that they cannot comply with [an injunction or writ of mandamus to keep the Roads open] is inadequate by definition. Likewise, this Court cannot determine if [the Homeowners] are entitled to monetary damages for the denied access without determining who denied them the access. Thus, if the Court were to determine it was the [T]ribe, not the [T]own, was responsible, the Court would have no ability to compensate the [Homeowners].

And, as we explained above, a judgment requiring the Town to compensate the Homeowners would be inadequate as to the Town, without the Tribe's inclusion as a party, because the Town would have no way to seek contribution from the Tribe. In short, and as the Town contends, "a decision that purports to resolve issues and address harm to the [Homeowners], caused by the Tribe, but that does not bind the Tribe to any action, is simply not adequate."

16

¶40     Finally, we address whether the Homeowners "will have an adequate remedy if the action is dismissed for nonjoinder." *See* WIS. STAT. § 803.03(3)(d). We conclude that dismissal in this case would not "have the effect of absolutely barring resolution" of the Homeowners' issues raised in their complaints. *See Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶34 (citation omitted).

¶41     The federal district court issued a permanent injunction "requiring that the Roads remain open and accessible barring a demonstrated change in circumstances and order of this court." *Town of Lac du Flambeau II*, 797 F. Supp. 3d at 902. We agree with the Town that WIS. STAT. § 803.03(3)(d) does not require this court to consider whether the Homeowners "will have the ability to assert a total and complete remedy." The question under § 803.03(3)(d) is instead whether the Homeowners "will have an adequate remedy if the action is dismissed." As the Town argues, the federal district decision "has now handed the [Homeowners] an extremely adequate"—almost complete—remedy by permanently keeping the Roads open and "preserving the value of their homes," despite that litigation not addressing the Homeowners' monetary damage claims for the roughly six-week period the Roads were barricaded. Accordingly, the Homeowners have already received an adequate remedy even if the action is dismissed for nonjoinder.

¶42     Having considered each of the WIS. STAT. § 803.03(3)(a)-(d) factors, we conclude that the actions should be dismissed in equity and good conscience because the Tribe is indispensable. For the foregoing reasons, we affirm the circuit court's orders granting the Town's motions to dismiss.

        *By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.